NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KERRY L. QUINN (Cal. Bar No. 302954)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5423
     Facsimile: (213) 894-6269
     E-mail:    Kerry.L.Quinn@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 16-00211-MWF |
|---|---|
| Plaintiff, | OPPOSITION TO DEFENDANT'S SECOND MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE |
| v. | |
| MICHAEL CASSINI, | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Kerry L. Quinn, hereby files its Opposition (the "Opposition") to Defendant's Second Motion for Early Termination of Supervised Release, filed on March 31, 2020 (docket no. 54) (the "motion" or the "instant motion").

//
//
//
//
//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 21, 2020

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
KERRY L. QUINN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On April 20, 2016, defendant Michael Cassini ("defendant"), pled guilty, pursuant to a plea agreement [docket no. 17], to a one-count information charging him with social security fraud in violation of 42 U.S.C. § 408(a)(6), and on November 9, 2016, this Court sentenced him to a five-month term of imprisonment followed by a three-year term of supervised release [docket no. 39]. Defendant was released from custody on May 26, 2017, and he thereafter began serving his three-year term of supervised release, which is scheduled to conclude on May 25, 2020. On October 2, 2019, defendant filed his first motion for early termination of supervised release (docket no. 47), raising similar grounds for termination as he raises in the instant motion (docket no. 54). That motion was denied. With this background, and given the lack of any new or urgent grounds for termination, defendant's new motion shows his continued resistance to this Court's rulings, including its recent rejection of a similar motion, and his continued frustration at facing the consequences of his own criminal conduct. Not only does his motion raise no new or urgent grounds for early termination, he appears to be seeking early termination so he can travel in violation of state and local stay-at-home orders. His motion should be denied.

**II.   PROCEDURAL HISTORY & STATEMENT OF FACTS**

Defendant's underlying criminal conduct is relevant to his request for early termination, and thus, the government begins with these facts.

From 2003 through 2005, defendant orchestrated a scheme to defraud financial institutions in the Seattle area. As part of the

scheme, defendant changed his name from his given name, Jeffrey Levitt, to the name "Michael Alan Cassini." He did so to hide his true identity from financial institutions and other fraud victims. (Presentence Investigation Reports ("PSR") ¶ 9.)

In July 2005, defendant pled guilty to ten counts of wire fraud and one count of bank fraud in relation to this criminal conduct, and he was sentenced to 84 months in prison and five years' supervised release. (PSR ¶ 10.) He was released from prison in June 2011, and began his term of supervised release. One of the conditions of defendant's supervised release was that he not possess any identification other than in his own true name. (PSR ¶ 11.)

In November 2013, defendant filed a motion with the Court seeking to modify the terms of his supervised release in order to change his name to "Michael Cohen." (PSR ¶ 13, docket no. 9, CR 12-756) He argued that the notoriety of his underlying crime, and publicity it received, was interfering with his employment prospects; he argued it was a burden on him to have employers know that he was a convicted felon, and he thus sought to change his name to a name that would not be associated with his criminal past and thus to remove the proverbial scarlet letter. Even before asking the Court for permission to change his name, at least as early as October 2013, defendant began using the name "Michael Cohen." (PSR ¶ 12.) He used this name on credit cards, in corporate filings, and for other purposes. (PSR ¶ 12.)

On January 8, 2014, following a hearing on defendant's name-change motion, the Court denied the motion. (Docket No. 12, CR 12-756.) Despite this ruling, and in direct violation of it, on January 10, 2014, just two days after he was ordered not to change his name,

2

defendant sent letters to one of the credit card agencies and a credit card issuer falsely notifying them that he had changed his name to Michael Cohen.  (PSR ¶ 14.)

Subsequently, defendant made false representations to financial institutions and other companies regarding his true identity, including obtaining and using debit and credit cards in the name Michael Cohen, obtaining bank accounts in this name, and using the name for other purposes.  (PSR ¶ 15.)

Defendant also falsely represented to employers and potential employers that his name was Michael Cohen and that he had never been convicted of a felony.  Defendant forged a California Driver License in the name of Michael Cohen and used this forged document to obtain employment in the fake name.  (PSR ¶ 16.)

On January 27, 2014, less than three weeks after he was ordered not to change his name, defendant went to the Social Security Administration ("SSA") office in Torrance, California, and applied to change his name to "Michael Cohen," and applied for and later obtained a Social Security card in that name.  (PSR ¶ 17.)  As proof of his purported name change, defendant submitted a forged California state court order to the SSA.  (PSR ¶ 17.)  The forged order contained a stamped filing date and a fake seal.  (PSR ¶ 17.)  To the SSA employee, the seal looked exactly like an authentic state court seal.  (PSR ¶ 17.)

The government filed the social security fraud charge that is the offense of conviction in the instant case as a result of defendant's violation of this Court's order, and his submission of a forged order in support of his request for a Social Security card in the new name that he was ordered not to use.  Although defendant

3

negotiated a resolution of that case, and it appears that he has been compliant with the terms of supervision thus far, he has not completed his supervision, which again is scheduled to terminate on May 25, 2020, and the same considerations that applied when the Court imposed the terms of supervision remain.

In his latest motion for early termination, defendant argued he urgently needed to obtain power of attorney for his mother, who was living in an assisted living facility and had been in and out of hospitals, and he represented that the United States Pretrial Services and Probation Office ("USPO") had refused to give him permission to obtain this power of attorney, and thus he sought early termination.  Following this filing, the USPO informed the government it was withdrawing its opposition to defendant's request to obtain power of attorney for his mother, and it indicated this would resolve defendant's motion for early termination.  It was not until April 20 that government became aware defendant was continuing to pursue his motion on the grounds that he wanted to be able to travel without USPO supervision and that his status on supervised release was jeopardizing his employment.[1]

The City of Los Angeles and the State of California are currently under stay-at-home orders, which, among other things, prohibit all travel except for essential activities and all business related travel other than for essential services.  On April 7, 2020, while those stay-at-home orders were in place, defendant requested permission from the USPO to travel for a work meeting in San Diego.

---

[1] To the extent necessary, the government seeks permission for a nunc pro tunc revision to this Court's previous briefing schedule, requiring the government to file any opposition by April 16, 2020.

4

As far as the government is aware, defendant does not work in an essential business, but is instead a consultant in the tech industry, supporting a variety of companies, which do not, again as far as the government is aware, include businesses that provide essential services.

### III. ARGUMENT

#### A.   Legal Standard

"[A] district court enjoys significant discretion in crafting terms of supervised release for criminal defendants." United States v. Weber, 451 F.3d 552, 557 (9th Cir. 2006).  Consistent with a district court's broad discretion in imposing terms of supervised release, the language of § 3583(e) gives district courts broad discretion in determining whether to grant a motion to terminate supervised release, and a district court's decision on termination is reviewed for abuse of discretion.  United States v. Emmett, 749 F.3d 817, 819 (9th Cir. 2014).

The legal standard for deciding a motion to terminate supervised release is set forth in 18 U.S.C. § 3583(e) and 18 U.S.C. § 3564(c). Under those statutes, "[t]he court, after considering a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a)," may terminate a term of supervised release "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."  Id. §§ 3564(c), 3583(e)(1). As the Ninth Circuit recently stated, "[t]he expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination," Emmett, 749 F.3d at 819, so long

as the district court explains its decision with sufficient clarity to provide meaningful appellate review. Id. at 819-222.

### B.  Reasons to Deny Early Termination

In this case, all factors – including the § 3553(a) factors, the conduct of defendant, and interests of justice – weigh against early termination. The crime of conviction resulted from defendant's previous violation of the terms of his supervised release, and his direct violation of this Court's order. Further, this Court previously denied his motion for early termination, which was made on similar grounds to the instant motion. His renewed request for early termination appears to be related to his resistance to this Court's orders and frustration with the consequences of his criminal conduct. Defendant has only a month left on supervision, and he will almost certainly be under mandatory stay-at-home orders until the end of his supervision. He works as a consultant in the tech industry, and has given no reason that he should need to travel before the end of his current supervision period. Any travel he would try to do – with or without supervision – would appear to violate local and regional stay-at-home orders and jeopardize public health. For this reason alone, defendant's motion should be denied.

## IV.  CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion for early termination of supervised release.